THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NIKOLAY KAUTSMAN, *et al.*,

Plaintiffs,

v.

CARRINGTON MORTGAGE SERVICES, LLC, *et al.*,

Defendants.

CASE NO. C16-1940-JCC

ORDER GRANTING MOTION TO DISMISS AND DISMISSING MOTION FOR CLASS CERTIFICATION

This matter comes before the Court on Defendant Carrington Mortgage Services, LLC's ("CMS") motion to dismiss (Dkt. No. 32) and Plaintiffs motion for class certification (Dkt. No. 34). Having considered the parties' briefing and the relevant record, the Court GRANTS CMS's motion to dismiss and DISMISSES as moot Plaintiffs' motion for class certification for the reasons explained herein.

I.  **BACKGROUND**

Plaintiffs are the fee title owners of a single family residence in Redmond, Washington. (Dkt. No. 44 at 6.) Wilmington Trust ("Wilmington"), is the lender of record, beneficiary of the Deed of Trust, and holder of a related Secured Promissory Note. (*Id*. at 7.) CMS services the Note for Wilmington. (Dkt. No. 44 at 7–8.) The Deed of Trust contains a provision allowing the lender to do whatever is "reasonable and appropriate to protect the lender's interest" in Plaintiffs' residence and

secure it if Plaintiffs "fail[] to perform the covenants and agreements contained in this Security Instrument" or "abandon[] the Property." (*Id*. at 7.) The covenants referenced above include Plaintiffs' agreement to make the timely payment of principal, interest, and late charges. (Dkt. No. 44-2 at 3.)

Plaintiffs assert CMS directed a related entity, Defendant Carrington Home Solutions L.P. ("CHS"), to enter onto their property and inspect the exterior of the residence without Plaintiffs' permission. (Dkt. No. 44 at 9.) Plaintiffs further assert that after erroneously determining that the property was vacant, CHS broke in, rekeyed the lock, winterized the property, and generally took possession of it. (*Id*.) All of this occurred despite clear signs that the property was not vacant. (*Id.*) Plaintiffs further allege that CMS charged them for the inspection and resulting fees by adding the fees to the balance of Plaintiffs' loan. (*Id*. at 10.) Plaintiffs allege this is a common practice by CMS and, as such, bring this suit as a class action. (Dkt. Nos. 34 at 1–4, 44 at 2–3.)

Plaintiffs brought suit in state court for breach of contract, violations of the duty of good faith and fair dealing, violations of Washington's Consumer Protection Act ("WCPA"), Revised Code of Washington § 19.86, and negligent supervision. (Dkt. No. 1-2.) CMS removed to this Court and moved for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Court granted the motion, dismissing some of Plaintiffs' claims without prejudice. (Dkt. No. 26.)

Plaintiffs since filed a second amended class action complaint (Dkt. No. 44).[1] The complaint includes additional claims for unjust enrichment and, for the first time, names CHS as Defendant in some of the claims. (*Id*.) It also alleges additional facts to support previously-asserted claims. (*Id*.) Lastly, Plaintiffs dropped their negligent supervision claim. The current claims are as follows: breach of contract by CMS (Claim #1); violations of the implied duty of good faith and fair dealing by CMS (Claim #2) (*Id*. at 8, 16–17); a WCPA violation by CMS and CHS (Claim #3) (*Id*. at 18–19); another WCPA violation solely by CMS (Claim #4) (*Id*. at 19); and two instances of unjust enrichment by

---

[1] Any amendment to a complaint supersedes prior complaints. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012). Therefore, this Court will only consider the current complaint.

CMS and CHS (Claims #5 and #6) (*Id*. at 19–21). Plaintiffs assert the following damages: fees CMS charged against their loan, costs Plaintiffs incurred to replace the lock and reverse CHS's winterization efforts, and legal consultation fees. (*Id*. at 10.)

Plaintiffs move to certify the matter as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). (Dkt. No. 34 at 12.) They seek to certify two classes. Plaintiffs define Class I as borrowers for whom CMS or their agents inspected their homes, deemed them to be vacant, engaged in preservation services, such as rekeying and winterization, and charged resulting fees against borrowers' loans. (*Id*. at 1.) Plaintiffs define Class II as borrowers for whom CMS or their agents inspected their homes and did not engage in further preservation services, but charged resulting inspection fees against their loans. (*Id*.) Plaintiffs move to be appointed as class representatives and their counsel as class counsel for each class. (*Id*. at 1–2.) Defendants oppose certification. (Dkt. No. 49.)

## II. DISCUSSION

### A. Motion to Dismiss

Only CMS moves to dismiss Plaintiffs' claims. (Dkt. No. 32.) But "[a] [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008) (internal quotations omitted). Therefore, to the extent CMS raises arguments that would also apply to CHS, the Court will consider dismissing claims against CHS.

#### 1. Legal Standard: Motion to Dismiss

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, to survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted). Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez*, 487 F.3d at 1249 (quotation omitted). "Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

2. Claims #1 and #2: Breach of Contract and Violations of the Implied Duty of Good Faith and Fair Dealing

Plaintiffs allege that when CHS, on CMS's behalf, entered their property and took possession, CMS breached its contract and violated its implied duty of good faith and fair dealing with Plaintiffs. (Dkt. No. 44 at 15–17.) As a threshold matter, in order to bring contract-based claims, Plaintiffs must plausibly allege privity between themselves and CMS. *N.W. Indep. Forest Mfrs. v. Dept. of Lab. and Industries*, 899 P.2d 6, 9 (Wash. App. 1995). Wilmington is the lender of record. (*Id*. at 7.) Nevertheless, Plaintiffs argue they have alleged sufficient facts to survive a 12(b)(6) motion. (Dkt. No. 47 at 3–5.)

Plaintiffs' theory of privity is that CMS, as a result of the compensation arrangement between Wilmington and CMS, holds a portion of Wilmington's Note as an assignee. (Dkt. No. 44 at 8, 15-16; Dkt. No. 47 at 3–4.) Because CMS retains various rights to modification fees, mortgagor-contracted fees, and float on payments it collects on Wilmington's behalf, it is "an assignee of a portion of the Loan." (Dkt. No. 47 at 3.) The Court disagrees. Even if CMS were an assignee, that assignment would relate only to the relevant portion of the Note—the holder's right to payments. (Dkt. No. 44 at 6–7, 16–17.) The preservation rights described in the Deed of Trust are separate from any right to payment that may have been assigned to CMS. *See*

*Architectural Woods, Inc. v. State*, 562 P.2d 248, 248 (Wash. 1977) (allowing for partial assignment of contract rights). And Plaintiffs fail to plead sufficient facts to support assignment of the Deed of Trust. Nor do they provide other legal authority supporting privity with Defendants. Therefore, they fail to satisfy the pleading standard under *Iqbal*. 556 U.S. at 681.

The Court GRANTS CMS's motion to dismiss Claims #1 and #2. The dismissal is without prejudice. Plaintiff may again attempt to plead sufficient facts to demonstrate privity. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### 3. Claims #3 and #4: Violations of the WCPA

Plaintiffs next allege that when CMS instructed CHS to inspect their property, CMS did so with the ultimate intent to deceive Plaintiffs into believing that they were rightfully dispossessed of their property (Claim #4). (Dkt. No. 44 at 19.) They further assert this was a "common practice" of CMS resulting from a "policy . . . devised at the highest level of management and ownership." (*Id*. at 10.) Plaintiffs also assert that when CHS changed the lock and winterized Plaintiffs' property, both CMS and CHS attempted to unlawfully deceive Plaintiffs into believing they were rightfully dispossessed (Claim #3). (*Id*. at 18–19.) Plaintiffs allege these practices violate the WCPA. (*Id*.)

A properly plead WCPA violation requires facts demonstrating the following elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) that causes injury to the Plaintiffs' business or property, and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). CMS asserts Plaintiffs failed to adequately plead the first element for Claims #3 and #4—an unfair or deceptive act or practice. (Dkt. No. 32 at 9–12.)

An act is per se unfair or deceptive if it violates a statute that declares the conduct at issue

to be unfair or deceptive. *Hangman Ridge*, 719 P.2d at 535. Otherwise, "a plaintiff must show the conduct is 'unfair' or 'deceptive' under a case-specific analysis of those terms." *Mellon v. Regl. Tr. Services Corp.*, 334 P.3d 1120, 1126 (Wash. App. 2014). For claims of deception, this requires showing "a 'representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir.1986)).

CMS asserts that Plaintiffs allege neither a per se violation nor a factually deceptive practice for either WCPA claim. (Dkt. No. 32 at 10–11.) Plaintiffs respond that the conduct at issue for both claims is factually deceptive. (Dkt. No. 47 at 6–7.) Plaintiffs rely in part on *Jordan v. Nationstar Mortg., LLC*, 374 P.3d 1195, 1200–02 (Wash. 2016). In *Jordan*, the court held that entry provisions contained in a Deed of Trust allowing a lender to take possession prior to completing a foreclosure action were counter to state law and, therefore, unenforceable. *Id.* at 1202. As a result, changing the locks on a home and forcing the homeowner to contact the loan service provider for a lockbox code in order to gain entry amounted to unlawful possession by the loan servicer. *Id.* at 1201. While *Jordan* supports the notion that some of Defendants' activities were unlawful, it does not necessarily support a claim based on a WCPA violation. A WCPA violation requires an *unfair* or *deceptive* practice, not simply an impermissible one. Had Plaintiffs alleged trespass, for instance, *Jordan* would be more useful.

Plaintiffs allege that by rekeying and winterizing the residence, CMS and CHS could have deceived Plaintiffs into believing they no longer had rightful possession of the property, even though foreclosure proceedings had not been completed (Claim #3). (Dkt. No. 44 at 9–10, 18.) The contention is implausible, in light of the language in the Deed of Trust indicating that the holder retains the right, not conditioned on commencing foreclosure proceedings, to protect its investment in the case of default. (Dkt. No. 44-2 at 6.) Specifically-authorized actions include "entering the Property to . . . change the locks . . . drain water from pipes . . . ." (Dkt. No. 44-2 at 6.) Similarly, if the Deed of Trust put Plaintiffs on notice that the holder could *enter* the property,

DISMISSING MOTION FOR CLASS
CERTIFICATION
C16-1940-JCC
PAGE - 6

it provided Plaintiffs notice that the holder may first *inspect* the property to determine its condition (Claim #4). Nor do Plaintiffs make any other allegations containing specific facts to support an inference of deceptive or unfair conduct. Instead, they make conclusory allegations insufficient to meet their pleading standard under *Iqbal*, 556 U.S. at 681. (See Dkt. No. 44 at 18) (suggesting that "Defendants' acts or practices are unfair and deceptive, and have the capacity to be deceptive, though both misrepresentations and withholding of material information" yet failing to include *any* misrepresentations or withholding of information by Defendants).

The Court GRANTS CMS's motion to dismiss Claims #3 and #4. The claims are dismissed as to both CMS and CHS without prejudice.

### 4. Claims #5 and #6: Unjust Enrichment

Finally, Plaintiffs allege that CMS and CHS were unjustly enriched when CMS charged property inspection fees (Claim #6) and any other fees it paid to CHS for lock rekeying, winterization, and other services (Claim #5). (*Id*. at 19–20.) "Three elements must be established for unjust enrichment: (1) there must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value." *Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473, 482 (Wash. App. 2007).

CMS asserts Plaintiffs neither establish conferment of a benefit nor a resulting inequity. (Dkt. No. 32 at 8–9.) As to the claims against CMS, the Court agrees and resolves the issue based solely upon whether a benefit was conferred. Plaintiffs have plead that the fees at issue were added to the outstanding loan balance, but have not asserted they ever paid these amounts to CMS. (Dkt. No. 44 at 19–21.) Therefore, Plaintiffs fail to adequately plead that they conferred a benefit to CMS. As to the claims against CHS, Plaintiffs did plead that payment was made by CMS to CHS for rekeying, winterization, and other services (Claim #5). But Plaintiffs fail to

allege that it would be inequitable for CHS to retain the payments from CMS. The Court cannot plausibly infer, even construing the facts presented in the complaint in the most favorable light to Plaintiffs, that the compensation arrangement between CMS and CHS is inequitable. Therefore, Plaintiffs fail to satisfy the relevant pleading standard. *Iqbal*, 556 U.S. at 681.

The Court GRANTS CMS's motion to dismiss Claims #5 and #6. The claims are dismissed as to both CMS and CHS without prejudice.

## III.  CONCLUSION

For the foregoing reasons, Defendant CMS's motion to dismiss (Dkt. No. 32) is GRANTED and Plaintiffs' motion for class certification (Dkt. No. 34) is DISMISSED as moot. The Court grants Plaintiffs leave to amend their complaint to address the deficiencies identified above. If Plaintiffs choose to do so, they must do so within thirty (30) days of the date of this Order.

DATED this 2nd day of October 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE