THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NIKOLAY KAUTSMAN, *et al.*, | CASE NO. C16-1940-JCC |
| Plaintiffs, | ORDER |
| v. | |
| CARRINGTON MORTGAGE SERVICES, LLC, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 63) Plaintiffs' Third Amended Complaint (Dkt. No. 60). Having considered the parties' briefing and the relevant record, the Court GRANTS in part and DENIES in part Defendants' motion (Dkt. No. 63) for the reasons explained herein.

## I. BACKGROUND

Plaintiffs obtained a loan from Countrywide Bank to finance a 2006 purchase of residential real property in King County, Washington. (Dkt. No. 60 at 10–11.) The loan is governed by an Adjustable Rate Note, requiring the periodic payment of interest and principal, and secured by a Deed of Trust recorded against the property. (Dkt. Nos. 60-1, 60-2.) Two provisions contained in the Deed of Trust are at issue. The first, entitled "Preservation, Maintenance and Protection of the Property; Inspections," permits the "Lender or its agent" to "enter and inspect" the exterior of the

property. (Dkt. No. 60-2 at ¶ 7.) The second, entitled "Protection of Lender's Interest in the Property and Rights Under the Security Agreement," permits the "Lender" to take certain actions if the borrower abandons the property or violates covenants in the Deed of Trust. (*Id*. at ¶ 9.) A failure to make periodic payments would be such a violation. (*Id*. at ¶ 1.) In the event of an abandonment or violation, the lender may "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property" including "entering the property to make repairs, change locks, replace or board up doors and windows, drain water from pipes . . . and have utilities turned on or off." (*Id*. at ¶ 9.)

Defendant Carrington Mortgage Services, LLC ("CMS") began servicing Plaintiffs' Note in 2013. (Dkt. No. 60 at 2, 16). Defendant Carrington Home Solutions, L.P. ("CHS") is a CMS affiliate who contracts with CMS to provide various services, including home inspections on properties where the borrower is behind on his or her payments, and re-keying and winterizing abandoned properties pending foreclosure proceedings. (*Id*. at 3, 6, 7.) CMS deems a property to be abandoned based on the results of CHS's inspections. (*Id*.)

Plaintiffs assert that after they fell behind on their Note payments, CMS instructed CHS to inspect their property, which CHS did on March 18, 2013, finding it vacant. (*Id*. at 17.)[1] CMS then instructed CHS to enter, re-key, and winterize the property. (*Id*. at 17–18.) The winterizing consisted of turning off utilities, taping over sinks and appliances, and "other steps that impaired the use of the property." (*Id*.) Plaintiffs received no notice of these activities. (*Id*. at 18.) They only discovered the "intrusion" when they attempted to show the property to a prospective tenant "on or about" March 27, 2013. (*Id*. at 18.) Plaintiffs allege the prospective tenant "more likely than not" would have rented the property had Plaintiffs been able to show it, but because Plaintiffs could not, their "credibility" with the prospective tenant was lost. (*Id*.) Plaintiffs replaced the lock, reversed CHS's winterization

---

[1] CHS previously inspected the property on February 7, 2013 and found it to be occupied. (*Id*. at 16.) Plaintiff describes the condition of the property on March 18, 2013 as "mostly empty" but "attractive and clean." (*Id*. at 17–18.)

ORDER
C16-1940-JCC
PAGE - 2

efforts, and eventually moved into the property themselves. (*Id*. at 18–19.) CHS continued to periodically inspect the property, but did not again attempt to re-key or winterize it. (*Id*.) CMS added the amount it owed to CHS for services rendered to Plaintiffs' outstanding note balance: $15 per inspection, $65 for re-rekeying, and $175 for winterizing. (*Id*. at 19–20.)

Plaintiffs assert that Defendants' inspection, re-key, and winterization activities were unnecessary and that this is a common practice by Defendants. (*Id*. at 3–7.) According to Plaintiffs, Defendants engage in these activities (1) in an effort to inflate the fees they charge and (2) to drive borrowers to abandon their homes, thereby reducing lenders' barriers to foreclosure proceedings. (*Id.*) Plaintiffs allege that between 2010 and 2016, CMS inspected and re-keyed the homes of numerous Washington borrowers before foreclosure proceedings commenced. (*Id*. at 24–25.) Accordingly, Plaintiffs bring this suit as a class action. (*See generally* Dkt. No. 60.)

Plaintiffs filed a Class Action Complaint and First Amended Class Action Complaint in state court against CMS, asserting CMS's actions were unlawful and resulted in injury. (Dkt. No. 1-2.) CMS removed the matter to this Court and moved for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. No. 17.) This Court granted the motion, dismissing some of Plaintiffs' claims without prejudice and with leave to amend. (Dkt. No. 26.) Plaintiffs filed a Second Amended Class Action Complaint, alleging additional facts supporting their claims, dropping a claim, adding a claim, and naming CHS as a defendant. (Dkt. No. 44). The Court granted CMS's subsequent motion to dismiss the Second Amended Complaint, dismissing all claims against CMS and CHS without prejudice and with leave to amend. (Dkt. No. 54.)

Plaintiffs then brought a Third Amended Class Action Complaint, asserting the same claims as the Second Amended Complaint, but adding additional facts.[2] (Dkt. No. 60.) Plaintiffs alleged the following: Defendants' re-key and winterization activities represent a CPA violation; CMS's

---

[2] Any amendment to a complaint supersedes prior complaints. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012). Therefore, this Court will only consider allegations contained in the current complaint.

ORDER
C16-1940-JCC
PAGE - 3

1 inspection activities represent a CPA violation; Defendants were unjustly enriched by the fees they charged for the inspection, re-key, and winterization activities; CMS breached its contract with Plaintiffs; and CMS violated its duty of good faith and fair dealing with Plaintiffs. (*Id*. at 28–44.) Defendants move to dismiss, asserting Plaintiffs' Third Amended Complaint adds "mostly irrelevant or conclusory allegations," and Plaintiffs "fail to overcome the deficiencies of their prior complaints." (Dkt. No. 63 at 2.)

## II. DISCUSSION

### A. Legal Standard

A defendant may move to dismiss when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, to survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted). Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez*, 487 F.3d at 1249 (quotation omitted). "Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

### B. CPA Violations

A properly pled CPA violation requires facts demonstrating the following elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) impacting the public interest, (4) that causes injury to business or property, and (5) causation. *Hangman Ridge*

*Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). In moving to dismiss, Defendants assert Plaintiffs failed to adequately plead the first element—an unfair or deceptive act or practice. (Dkt. No. 63 at 8–11.) An act is per se unfair or deceptive if it violates a statute that declares the conduct at issue to be unfair or deceptive. *Hangman Ridge*, 719 P.2d at 535. Otherwise, "a plaintiff must show the conduct is 'unfair' or 'deceptive' under a case-specific analysis of those terms." *Mellon v. Regl. Tr. Services Corp.*, 334 P.3d 1120, 1126 (Wash. App. 2014). "[A]n act or practice can be unfair without being deceptive." *Klem v. Washington Mutual Bank*, 295 P.3d 1179, 1187 (Wash. 2013). "[A] 'practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits [to consumers or to competition][3].'" *Id.* (alteration in original) (quoting 15 U.S.C. § 45(n)). An act is deceptive if it involves "a 'representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir.1986)).

1. <u>Re-keying and Winterizing the Property</u>

Plaintiffs allege that CHS's re-keying and winterizing actions were unfair and deceptive. (Dkt. No. 60 at 28.) Plaintiffs point to the Washington State Supreme Court's decision in *Jordan v. Nationstar Mortg., LLC*, 185 P.3d 1195 (Wash. 2016). In *Jordan* the court held that provisions permitting pre-foreclosure entry conflict with Washington law because such acts amount to pre-foreclosure dispossession. *See* 185 P.3d 1195, 1200–02 (Wash. 2016) (citing Wash. Rev. Code § 7.28.230 and RESTATEMENT (THIRD) OF PROP. MORTGAGEES § 4.1 cmt. b (addressing conflicts

---

[3] Washington case law interpreting its CPA relies on the Federal Trade Commission Act of 1914. *See, e.g.*, *Klem*, 295 P.3d at 1187; *Rush v. Blackburn*, 361 P.3d 217, 225 (Wash. App.). When articulating the standard for an unfair practice, Washington courts normally truncate 15 U.S.C. § 45(n), excluding the final reference to "consumers and competition." *Id*. It does not appear that Washington courts intend to modify the meaning of the statute when doing so. Therefore, this Court applies the language of 15 U.S.C. § 45(n) in its entirety.

between lien theory statutes, such as Washington's, and pre-foreclosure entry provisions)).[4] The Washington State Supreme Court considered the issue as a certified question. *Id*. at 1198. It limited it analysis to the lawfulness of the entry provision. *Id*. It never considered the issue in the context of a CPA claim. However, the court who certified the question has, finding the defendant's pre-foreclosure re-keying unfair and deceptive using *Klem's* case-specific analysis. *See Jordan v. Nationstar Mortg., LLC*, C14-0175-TOR, slip op. at 18–21 (E.D. Wash. Nov. 21, 2017). This Court finds its colleague's reasoning persuasive, particularly in light of facts included in Plaintiffs' Third Amended Complaint.

First, Plaintiffs allege they were temporarily dispossessed, lost rental income, incurred costs to change the lock and reverse CHS's winterization efforts, had amounts charged against their loan by CMS, and incurred legal fees in seeking guidance on the issue. (*Id*. at 20, 28–9.) This is sufficient to establish substantial harm. *Klem*, 295 P.3d at 1187. Second, Plaintiffs allege they were not in a position to meaningfully negotiate the Deed of Trust's entry provisions because those provisions are required by Fannie Mae, Freddie Mac, and the Federal Housing Authority for loans sold into the secondary market. (Dkt. No. 60 at 37); (*see also id*. at 30) (describing the Federal Trade Commission's findings further supporting Plaintiffs' assertion). Plaintiffs further allege the property was vacant less than a month before CHS's entry, it was well maintained, and it contained a few items of their personal property, including a piano, at the time of entry. (*Id*. at 17, 30.) This is sufficient to establish that Defendants' actions were not

---

[4] *Jordan's* facts are similar to those here, with some exceptions. First, in *Jordan*, Nationstar left notice and a lockbox at the property containing the new key. 185 P.3d at 1197. Here, CHS provided neither. (Dkt. No. 60 at 32.) Ms. Jordan merely had to call Nationstar for access to the key. *Id*. Second, Ms. Jordan contends her home was not vacant; she was living there but at work when Nationstar changed the lock. *Id*. at 1198. Plaintiffs admit the home was vacant at the time CHS entered it. (Dkt. No. 60 at 17–18.) Third, Ms. Jordan vacated her property the next day, whereas Plaintiffs quickly gained entry, changed the lock, reversed CHS's winterization efforts, and eventually moved back in. (*Id*. at 18–19.)

reasonably avoidable.[5] *Klem*, 295 P.3d at 1187. Finally, Plaintiffs allege that any benefit they could have received from attempts to secure their property, such as retaining the value of the property for eventual foreclosure sale, is contrary to evidence presented by consumer interest groups, who have shown that re-key activities only serve to increase the likelihood of foreclosure, thereby frustrating state and federal laws intended to keep homeowners in their homes. (Dkt. No. 60 at 30.) This is sufficient to establish that Plaintiffs' injuries were not outweighed by countervailing benefits. *Klem*, 295 P.3d at 1187.

The allegations above are sufficient to support a finding that Defendants' re-keying and winterizing were unfair, thereby providing a factual basis for a CPA claim. The Court need not reach the issue of whether the practice was also deceptive.

On this basis, the Court DENIES Defendants' motion to dismiss Plaintiffs' CPA claim as it relates to Defendants' re-key activities.

2. Inspecting the Property

Plaintiffs also assert CHS's inspections themselves were unfair and deceptive because Defendants used the inspections to facilitate subsequent re-key and winterizing efforts. (Dkt. No. 60 at 34–35.) Plaintiffs offer no plausible facts to support this assertion. "Naked assertions" without "further factual enhancement" are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted). Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiffs' CPA claim as it relates to Defendants' inspection activities.

**C. Unjust Enrichment**

Plaintiffs also allege Defendants were unjustly enriched by the fees CMS charged against

---

[5] This Court does not find the argument that Plaintiffs could have avoided injury by simply not defaulting as persuasive. Many factors may have accounted for Plaintiffs' default. As the Eastern District of Washington pointed out, "[i]t is not illegal to default on a loan" and "other lawful remedies" were available "short of repossessing the property in violation of Washington law." *Jordan*, slip op. at 19.

Plaintiffs' loan for inspections, re-key, and winterization efforts. (Dkt. No. 60 at 39–40.) Unjust enrichment requires the conferment of a benefit "on one party by another [party]." *Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473, 482 (Wash. App. 2007). Plaintiffs suggest CMS "is paid" through the following mechanisms: when a borrower reinstates a loan, during the foreclosure process, when the loan servicer sells its servicing rights, or when the homeowner sells the property. (Dkt. No. 60 at 40.) Plaintiffs allege CMS was paid here when it sold its mortgage servicing rights to a new servicer. (*Id.*)[6] The Court does not view this as a benefit "at the plaintiff's expense" because Plaintiffs never, in fact, paid it. *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). The new loan servicer did. Therefore, Plaintiffs' allegations are insufficient to survive a motion to dismiss. The Court GRANTS Defendants' motion to dismiss Plaintiffs' unjust enrichment claim.

### D. Breach of Contract and Duty of Good Faith and Fair Dealing

Finally, Plaintiffs allege that when CHS, on CMS's behalf, entered and re-keyed their property, CMS breached its contract with Plaintiffs and violated its implied duty of good faith and fair dealing. (Dkt. No. 60 at 41–44.) As a threshold matter, Plaintiffs must plausibly allege privity between themselves and CMS to bring contract-based claims. *N.W. Indep. Forest Mfrs. v. Dept. of Lab. and Industries*, 899 P.2d 6, 9 (Wash. App. 1995).

Plaintiffs' theory is that by virtue of the compensation arrangement between CMS and the lender, CMS is an assignee of the portion of the Deed of Trust containing the inspection and entry provisions. (Dkt. Nos. 60 at 12, 13, 41–43; 66 at 19) The Court disagrees. Even if CMS were an assignee, the only thing it plausibly was assigned is the portion of the Note addressing terms of payment—not the Deed of Trust. (*Id.*) As this Court has previously described, the Deed of Trust's preservation rights are separate from the Note. (Dkt. No. 54 at 4–5) (citing

---

[6] This allegation relates solely to inspection fees. Plaintiffs do not allege that CMS was ever paid for other amounts charged against Plaintiffs' loan. (*See generally* Dkt. No. 60 at 13–16, 39–40.)

*Architectural Woods, Inc. v. State*, 562 P.2d 248, 248 (Wash. 1977)). Therefore, Plaintiffs fail to plead sufficient facts to support privity. The Court GRANTS Defendants' motion to dismiss all contract-based claims.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 63) is GRANTED in part and DENIED in part. All but Plaintiffs' CPA claim for Defendants' re-key and winterization activities are dismissed without prejudice and without leave to amend.[7]

DATED this 23rd day of January 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[7] The Court has twice previously granted Plaintiffs leave to amend, yet Plaintiffs have been unable to cure their pleading deficiencies. The Court concludes that granting further leave to amend would be futile.