THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NIKOLAY KAUTSMAN, *et al.*,

    Plaintiffs,

  v.

CARRINGTON MORTGAGE SERVICES, LLC, *et al.*,

    Defendants.

CASE NO. C16-1940-JCC

ORDER

This matter comes before the Court on Plaintiffs' motion for class certification (Dkt. No. 72), motion for extension of time to file a motion for class certification (Dkt. No. 78), and motion to amend their complaint (Dkt. No. 73). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I.  BACKGROUND

The facts of this case have been detailed in prior orders. (*See* Dkt. Nos. 54, 68.) The Court previously dismissed all of Plaintiffs' claims except the claim alleging that Defendants' rekeying and winterization practices violate Washington's Consumer Protection Act ("CPA"). (*Id.* at 9.) Plaintiffs now move for class certification on their CPA claim. (Dkt. No. 72.)[1]

---

[1] Plaintiffs also move to amend their complaint so that it is more compliant with the Court's previous order dismissing some of Plaintiffs' claims and to fix proofreading errors. (*See* Dkt. No.

ORDER
C16-1940-JCC
PAGE - 1

1    Plaintiffs seek to certify a class of all persons (a) who own(ed) real property in
2  Washington State subject to a deed of trust or mortgage serviced or held by CMS; and (b) who,
3  within the applicable statute of limitations, had their property entered by CMS and/or its agents
4  for the purpose of changing the locks on the property, prior to CMS completing a foreclosure of
5  the property. (*See* Dkt. No. 83 at 3.) Plaintiffs move to be appointed as class representatives and
6  to have their counsel appointed as class counsel. (*See* Dkt. No. 72 at 2.) Defendants oppose class
7  certification. (Dkt. No. 74.)

## II. DISCUSSION

### A. Timeliness of Plaintiffs' Motion

Local Civil Rule 23(i)(3) requires that a plaintiff move for class certification within 180 days of filing a class action complaint. W.D. Wash. Local Civ. R. 23(i)(3). However, the 180-day period may be extended on motion for good cause. *Id.* Plaintiffs filed their motion for class certification (Dkt. No. 72) 252 days after filing the operative complaint (Dkt. No. 60). Plaintiffs argue that there is good cause for extending the deadline because Plaintiffs' counsel have had to deal with personal, time-consuming circumstances and because counsel misinterpreted Local Civil Rule 23(i)(3). (Dkt. Nos. 78, 86, 88.) Defendants argue that, because the deadline lapsed without Plaintiffs seeking an extension, the Court should apply an excusable neglect standard. (Dkt. No. 84 at 2.) Defendants also argue that, even if a good cause standard applies, there is not good cause here because Plaintiffs' operative motion for class certification is "a copy of their original class certification motion with a cursory—and deficient—effort to scrub the motion of references to claims or proposed classes that the Court dismissed from the case." (Dkt. No. 74 at 9.) Defendants argue that these changes did not require the two months that Plaintiffs took beyond the 180-day deadline. (*Id.*)

---

73.) Defendants do not oppose Plaintiffs' motion, except to the extent that it restarts the clock within which Plaintiffs must move to certify the class under Local Civil Rule 23(i)(3). (Dkt. No. 85.) Plaintiffs' motion (Dkt. No. 73) is GRANTED.

While Defendants' arguments are reasonable, Plaintiffs have shown good cause for their delay. Moreover, the Court finds that denying Plaintiffs class certification on timeliness grounds would be a disproportionate penalty. Finding good cause, Plaintiffs' motion to extend the deadline to file a motion for class certification (Dkt. No. 78) is GRANTED.

### B. Legal Standard for Class Certification

A party seeking to litigate a claim as a class representative must affirmatively satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). In determining whether the plaintiffs carry their burden, the Court must conduct a "rigorous analysis." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The Court must consider the merits of the class members' substantive claim when the merits overlap with class certification issues. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). The ultimate decision to certify a class is within the Court's discretion. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

### C. Rule 23(a) Requirements

Rule 23(a) states that one or more members of a class may sue as a representative plaintiff only if (1) the class is so numerous that joinder is impracticable; (2) there are common questions of law or fact to the class; (3) the claims or defenses of representative parties are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the absent class members. Fed. R. Civ. P. 23(a); *Mazza*, 666 F.3d at 588 ("Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class action.").

#### 1. Numerosity

Rule 23(a)'s first requirement is satisfied when the proposed class is sufficiently numerous to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). A numerosity

determination requires an examination of the specific facts of each case, though "[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *see also Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 652 (W.D. Wash. 2011) (certifying a class of 43 to 54 members). Plaintiffs assert that there are 124 class members. (Dkt. No. 74 at 12.) Defendants do not challenge this assertion or argue that Plaintiffs have failed to establish numerosity. (*See generally* Dkt. No. 74.) Because of the relatively small size of each individual's claim and the relatively large amount of class members, the Court finds joinder of 124 individual plaintiffs to be impracticable. Therefore, Plaintiffs have established that numerosity is satisfied.

    2. Commonality

Under Rule 23(a)(2)'s commonality requirement, the plaintiffs must demonstrate that the "class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Dukes*, 564 U.S. at 350). The key inquiry is not whether the plaintiffs have raised common questions, but whether "class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350). Every question of law or fact need not be common to the class. *Id.* Rather, all Rule 23(a)(2) requires is "a single *significant* question of law or fact." *Id.* Ultimately, the existence of "shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, Plaintiffs support commonality for the class through their reliance on a recent Washington Supreme Court case which held that provisions permitting pre-foreclosure entry conflict with Washington law because such acts amount to pre-foreclosure dispossession. *See Jordan v. Nationstar Mortgage, LLC*, 374 P.3d 1195 (Wash. 2016); (Dkt. No. 72 at 13). Each class member's claim depends upon the identical factual allegation that, pre-foreclosure, their

property was entered and rekeyed by Defendants, resulting in dispossession, under *Jordan*. This factual predicate gives rise to the dispositive legal question of whether Defendants' rekeying practices are an "unfair practice" under the CPA. Whether a class member was totally excluded from the property, abandoned the property, or had notice of Defendants' entry is of no import to determining whether Defendants' pre-foreclosure rekeying practices, alone, are an "unfair practice" under the CPA. Plaintiffs have established commonality because their claims share some factual predicate and can be resolved through the same dispositive question of law under *Jordan*.

### 3. Typicality

Plaintiffs must next show that their claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The commonality and typicality inquiries "tend to merge" and both serve as "guideposts for determining whether under the particular circumstances[,] maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. Ultimately, representative class claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

The Court agrees with Plaintiffs that their claims are typical of the class. Mr. Kautsman and Ms. Kofanova own real property in Washington State that is subject to a Deed of Trust serviced by Defendants. (Dkt. No. 73-1 at 5–8.) Prior to foreclosure, Defendants entered and rekeyed Mr. Kautsman and Ms. Kofanova's property. (*Id.* at 9.) These are the characteristics of the defined class. *See infra* Part II.E. Although the amount of harm suffered may vary between class members, the nature of the harm is the same. Therefore, for many of the same reasons that

Plaintiffs established commonality, Plaintiffs have established that the named Plaintiffs are typical of the proposed class.

### 4. Adequacy of Representation

To determine whether the representative parties will adequately represent a class, the Court must examine whether the named plaintiffs and their counsel (1) have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985. With regard to the first prong, Plaintiffs assert that the named Plaintiffs have aligned interests because, like all other members of the class, the named Plaintiffs were injured when Defendants allegedly entered and rekeyed their property, prior to foreclosure, and that they have shown this interest by participating substantially in this litigation. (*See* Dkt. No. 72 at 14.) Defendants do not dispute that the named Plaintiffs have sufficiently aligned interests. Instead, Defendants argue that Plaintiffs' counsel have failed to prove that they will vigorously prosecute the action. (Dkt. No. 74 at 11–13.)

Defendants argue that Plaintiffs' counsel (1) filed their class certification motion more than two months past the deadline (which was nearly verbatim to an earlier-filed motion); (2) assert that they have been unable to proceed further with discovery, when that inability has been due to Plaintiffs' lack of communication with Defendants or failure to prosecute the action, and (3) have failed to make any progress on developing a damages model to support their request for class certification. (*Id.*) Plaintiffs assert that one of their attorneys, Mr. Bharti, has had to deal with significant personal issues, which has caused a delay in the prosecution of this class action. (Dkt. Nos. 80, 80-1, 80-2, 83 at 7.) Plaintiffs assert their counsel is adequate because Mr. Bharti has substantial experience in litigating class actions and Mr. Anderson has handled numerous consumer civil actions. (Dkt. No. 72 at 14.)

In considering class counsel's adequacy, "the court should consider the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions and other complex cases; the types of claims at issue; counsel's

knowledge of applicable law; and the resources counsel will commit to representing the class." *Darrington v. Assessment Recovery of Wash.*, 2013 WL 12107633, slip op. at 5 (W.D. Wash. 2013) (citing Fed. R. Civ. P. 23(g)). "[T]he zeal and competence of the counsel and party who wish to prosecute the action" is one of the factors the Court considers in assessing adequacy of representation. *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

It is not lost on the Court that Plaintiffs' counsel have recently been delayed in litigating this case. However, Plaintiffs' counsel have historically prosecuted this case with vigor. Plaintiffs have filed many amended complaints, defended against several motions to dismiss, and previously filed a motion for class certification and a motion for reconsideration. (Dkt. Nos. 19, 27, 34, 44, 47, 55, 60, 66.) Plaintiffs' counsel informed the Court that the reason for their recent lack of prosecutorial vigor was due to unusual personal problems faced by Mr. Bharti that both he and Mr. Anderson had to deal with. (Dkt. No. 80.) Moreover, Plaintiffs' counsel have experience in class action litigation and consumer protection litigation and are qualified to prosecute this case. (Dkt. No. 72 at 14.) Therefore, the Court finds that the named Plaintiffs and Plaintiffs' counsel will adequately represent the class.

### D. Rule 23(b) Requirements

In addition to meeting the Rule 23(a) requirements, a proposed class action must also be maintainable under Rule 23(b)(1), (b)(2), or (b)(3). *Dukes*, 564 U.S. at 345. Plaintiffs seek certification of the class under Rule 23(b)(3). (*See* Dkt. No. 72 at 14.) A class action may be maintained under Rule 23(b)(3) when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997) (explaining that Rule 23(b)(3) requires a two-part analysis of "predominance" and "superiority"). Ultimately, certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*,

150 F.3d at 1023.

1. Predominance

The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This inquiry presumes the existence of common factual or legal issues required under Rule 23(a)'s "commonality" element, focusing instead "on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022; *see Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation omitted).

As discussed above, whether Defendants are liable for a CPA violation because they entered and rekeyed class members' property, prior to foreclosure proceedings, is a common inquiry. Common issues predominate on establishing all five of the elements of a CPA violation. In proving a CPA claim, a plaintiff must prove that the defendant (1) engaged in an unfair or deceptive act or practice that (2) occurred in trade or commerce, (3) had a public interest impact, and (4) caused (5) injury to the plaintiff in his or her business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

With regard to the first two elements, Plaintiffs allege that Defendants' pre-foreclosure rekeying activities are an unfair practice occurring in trade or commerce, under *Jordan*. (*See* Dkt. No. 72 at 16.) These elements are uniform among class members. The third element is also uniform among class members—one result of successful class action litigation on this subject would be to show that Defendants' pre-foreclosure rekeying activities have a public interest impact because they affect many people. The fifth element is uniform among class members because, under the CPA, "injury is distinguished from damages. No monetary damages need be

proven so long as there is some injury to property or business." *See Sorrel v. Eagle Healthcare, Inc.*, 38 P.3d 1024, 1028 (Wash. Ct. App. 2002). Plaintiffs allege a common injury: that Defendants' entry and rekeying dispossessed them of their property. Since all class members were allegedly subject to Defendants' practice, the fact of injury is uniform among class members. Finally, the fourth element is uniform among class members because all class members were necessarily dispossessed when Defendants entered and rekeyed, prior to foreclosure. The ability to adjudicate all of the elements of Plaintiffs' claim in a class action demonstrates that the common factual and legal issues overwhelmingly predominate.

Defendants claim that individualized inquiries predominate over commonalities. (*See* Dkt. No. 74 at 16–22.) However, the individualized inquiries that Defendants highlight are really issues of measuring the cost of dispossession. Some of these individualized inquiries include whether a property owner was entirely excluded and for how long; whether a property owner was provided notice and thus, had time to make some arrangements to avoid costs; and whether a property owner suffered property damage or was charged a rekeying fee, as a result of Defendants' pre-foreclosure rekeying. All of those issues go to the amount of monetary damages individual class members suffered as a result of Defendants' conduct.

In the Ninth Circuit, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (alteration in original) (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)); *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010). It is true that it is a "clear legal misstep" for the Court to fail to distinguish between the *amount* of damages and the *fact of injury* needed to support a claim. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016). But as noted above, Plaintiffs allege that all of the class members in this class have suffered the same injury-in-fact—dispossession. The cost of that dispossession (influenced by various factors, including exclusion, abandonment, notice, property damage, and rekeying fees) is an individualized inquiry and will turn on the individualized circumstances of

each class member. The cost of the injury of dispossession cannot defeat class action certification. *See Leyva*, 716 F.3d at 514. Therefore, Defendants' alleged liability, under the CPA and *Jordan*, predominates over the individualized inquiry of the amount of damages.

        2. <u>Superiority</u>

Rule 23(b)(3) requires that the Court find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When undertaking this inquiry, the Court considers (1) the interest of individuals within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Zinzer v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–92 (9th Cir. 2001). Consideration of these factors must "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinzer*, 253 F.3d at 1190.

Here, a class action is superior to other available methods of adjudicating the class members' claims. "Where damages suffered by each putative class member are not large," the first factor "weighs in favor of certifying a class action." *Id.* Each putative class member here suffered a relatively small financial loss, if there was any calculable monetary loss at all. This makes it unlikely that class members will pursue their individual claims. Further, this class is necessarily a class of individuals with limited means, which makes class members even less likely to pursue their individual claims.

Although Plaintiffs will indeed need to propose a workable plan to calculate the amount of damages suffered by each individual class member, the Court is not persuaded by Defendants' "individualized inquiry" arguments regarding the manageability of this class action. Therefore, Plaintiffs have established that class action litigation is superior to other methods of adjudicating this controversy. Accordingly, Plaintiffs' class will be certified under Rule 23(b)(3).

**E.     Class Overbreadth**

Defendants correctly argue that Plaintiffs' initially proposed class[2] is overbroad. Plaintiffs' initially proposed class reflects theories of liability that the Court has already dismissed. (*See* Dkt. No. 68.) In response, Plaintiffs propose another overbroad and imprecise class[3] and state that if the Court decides that the class definition is inadequate, "it may modify the class definitions as appropriate." (*See* Dkt. No. 83 at 3.)

The Court concludes that the class definition is overbroad and will narrow it to comply with Rule 23. *See Booth v. Appstack, Inc.*, 2015 WL 1466247, slip op. at 16 (W.D. Wash. 2015) (citing *Nat'l Fed'n of the Blind v. Target Corp.*, 2007 WL 1223755, slip op. at 3–4 (N.D. Cal. 2007)) (recognizing that a district court has discretion to modify a class definition). Defining a

---

[2] In their motion for class certification (Dkt. No. 72), Plaintiffs define the class as:

"All borrowers with loans serviced by Carrington Mortgage Services LLC of properties location [*sic*] in the State of Washington who:

(a) Own or owned real property in Washington State subject to a deed of trust or mortgage serviced or held by Carrington Mortgage Services LLC; and

(b) Within the applicable statute of limitation [*sic*], were deemed by Carrington Mortgage Services LLC and/or its agents to have quit, vacated, or otherwise "abandoned" such Property, and

(i)     Which property was entered upon by Carrington Mortgage Services LLC and/or its agents for the purpose of changing the locks on the property, entering into improvements on the property, winterizing the property, or posting notice upon the property regarding abandonment or winterization; and/or

(ii)    Who were charged by Carrington Mortgage Services LLC for fees relating to property inspections, lock changes, and subsequent so-called "preservation" services upon the property by Carrington Mortgage Services LLC and/or its agents."

[3] Plaintiffs define the new class as:

"Putative Class of Class [*sic*]. The members of the relevant class include all persons: (a) who own or owned real property in Washington State subject to a deed of trust or mortgage serviced or held by CMS; and (b) who, within the applicable statute of limitations was entered [*sic*] by CMS and/or its agents for the purpose of changing the locks on the property prior to CMS completing a foreclosure of the property."

class as those property owners who had their property entered "for the purpose of" changing the locks is both impossible to quantify and likely inclusive of property owners who were not ultimately dispossessed. For that reason, the class is modified and certified as follows:

> All persons (a) who own(ed) real property in Washington State subject to a deed of trust or mortgage serviced or held by Carrington Mortgage Services LLC ("CMS"); and (b) who, within the applicable statute of limitations, had their property entered and rekeyed by CMS and/or its agents, prior to CMS completing a foreclosure of the property.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motions for class certification (Dkt. No. 72), to amend their complaint (Dkt. No. 73), and for an extension of time to file a class certification motion (Dkt. No. 78) are GRANTED.

DATED this 27th day of November 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE